**Beverly Ann HALL, Appellant,**

v.

**Morris CAFRITZ, Trustee, et al., Appellees.**

No. 13094.

District of Columbia Court of Appeals.

Argued Oct. 19, 1978.

Decided June 6, 1979.

Rehearing and Rehearing En Banc Denied July 27, 1979.

Charles C. Parsons, Washington, D. C., for appellant.

Leo A. Roth, Jr., Washington, D. C., appearing as an officer of the court, for appellees.

Before GALLAGHER and HARRIS, Associate Judges, and WEISBERG, Associate Judge, Superior Court of the District of Columbia.*

WEISBERG, Associate Judge:

This is an appeal from an order dismissing appellant's complaint on the ground that her suit was barred by the statute of limitations. An understanding of the issues on appeal requires a fairly detailed statement of pertinent facts.

On March 6, 1974, appellant was allegedly assaulted in a building located at 1530 16th Street, N.W., Washington, D.C. On Friday, March 4, 1977, three days before the expiration of the applicable three-year statute of limitations,[1] counsel for appellant filed a complaint naming as defendants "Morris Cafritz, Trustee," who plaintiff believed was the owner of the building where the assault allegedly took place, and Scott Detective Agency, Ltd., the party responsible for providing security in the building. The necessary summonses were issued by the Clerk and given to counsel for appellant on March 4, 1977. Rather than delivering copies of the summonses and complaint to the United States Marshal for service, counsel for appellant took it upon himself to mail them by certified mail, pursuant to Super.Ct.Civ.R. 4(c)(3). However, counsel did not mail the papers until March 8, 1977, one day after the statute of limitations had run, at which time he sent a copy of the summons and complaint by certified mail, restricted delivery, return receipt requested, to "Morris Cafritz, Trustees," 800 17th Street, N.W., Washington, D.C.[2] On Wednesday, March 9, 1977, Riggs National Bank accepted service on behalf of "Morris Cafritz, Trustees."

On March 28, 1977, Mr. Leo A. Roth, Jr., appearing as "an officer of the court,"[3] moved to dismiss the complaint. Mr. Roth observed that Morris Cafritz died in 1964, and contended that appellant, through due diligence, should have discovered that the true owners of the building on March 4, 1974, were Carter Cafritz, Calvin Cafritz, Conrad Cafritz, and Riggs National Bank of Washington, D.C. In response, appellant's counsel asserted that he was personally unaware of Morris Cafritz's death, that he had exercised due diligence in attempting to name the true owners of the building, and that, pursuant to Super.Ct.Civ.R. 15(c), he should be granted leave to amend to name the proper defendants.

On June 1, 1977, the trial court heard argument by both counsel. Ruling from the bench, the trial judge found that appellant, in attempting to determine the owner of the building in question, had unjustifiably relied upon the erroneous public records of the Real Estate Tax Assessment Office. The court then dismissed the complaint with prejudice, ruling that the statute of limitations had run and that, under the circumstances, an amendment of the complaint seeking to name the correct owners would not "relate back" under Rule 15(c). Appellant's Motion for Reconsideration was denied on August 28, 1977. After

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. D.C.Code 1973, § 12–301, provides, in relevant part:

   actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:

   *    *    *    *    *    *

   (8) for which a limitation is not otherwise specifically prescribed—3 years.

   The limitations period for negligence is one of those that "is not otherwise specifically prescribed."

2. The record below is silent on the reason for the delay between the issuance of process and the mailing. Counsel for appellant explained at oral argument before this court that, to the best of his recollection, he had initially intended to mail the papers on Monday, March 7, 1977, but did not because his secretary did not come into the office on that day.

3. It is not entirely clear on this record whom Mr. Roth represents. He has appeared throughout these proceedings as "an officer of the court" because Morris Cafritz, the named defendant whom he would otherwise represent, was deceased.

the filing of additional pleadings, the court, pursuant to Super.Ct.Civ.R. 54(b), entered final judgment in favor of defendant "Morris Cafritz, Trustee" on December 27, 1977.[4]

■ Although appellant maintains on appeal that she should have been granted leave to amend the complaint to name additional parties,[5] the threshold question presented by this case is whether the filing of the complaint on March 4, 1977, without more, tolled the running of the statute of limitations. If the statute of limitations was not tolled, but continued to run until the summons and complaint were mailed on March 8, 1977, then this action was not brought within the statutory period, and it must be dismissed, whether or not appellant's motion to amend to name the proper defendants was correctly denied by the trial court.[6]

For many years courts in this jurisdiction held that an action is "commenced" for the purpose of tolling the statute of limitations as soon as "a plaintiff has filed his [complaint] and has done all that is incumbent on him to have process issued and served." *Maier v. Independent Taxi Owner's Ass'n*, 68 App.D.C. 307, 308–09, 96 F.2d 579, 580–81 (1938), citing *Huysman v. Newspaper Co.*, 12 App.D.C. 586 (1898). In *Maier*, counsel for plaintiff filed the complaint, and process was issued on the last day before the statute of limitations ran. Counsel delivered the summons and complaint to the Marshal on the same day, but was unable to pay the Marshal's fee, apparently through no fault of his own. Counsel was then called out of town for a family emergency and asked his associate to pay the Marshal's fee. Upon counsel's return approximately one and a half months later, he learned that his associate had never paid the fee. Counsel immediately tendered the fee, and process was served. Taking note of the absence of any statute or trial court rule "determinative of when an action is to be deemed commenced for limitations purposes,"[7] and of the local custom of having

**4.** Superior Court records reflect that plaintiff's suit against Scott Detective Agency, Ltd. is still active in the pre-trial stages of litigation.

**5.** Appellant concedes that none of the true owners whom she sought to bring in as defendants by amendment had notice of the institution of this action until after the expiration of the statute of limitations, and that the proposed amendment seeking to name additional defendants therefore does not meet the literal requirement of Super.Ct.Civ.R. 15(c). Appellant maintains that the amendment should have been allowed, nonetheless, because her failure to name the true owners in the original complaint was solely attributable to the acts of members or representatives of the Cafritz family who continued to cloak Morris Cafritz with the indicia of ownership long after his death in 1964. In view of our disposition of the threshold issue presented by this case, we do not reach the merits of appellant's Rule 15(c) claim.

**6.** This statute of limitations issue was never explicitly raised during the proceedings below, and the lower court did not rule that plaintiff's action, as originally filed and served, was barred by the statute of limitations. Instead, the court dismissed the action on the ground that plaintiff's motion to amend the complaint to name additional defendants did not meet the requirements of Rule 15(c). Both parties have, however, fully briefed and argued the statute of limitations issue on appeal, recognizing that it is a necessary liminal inquiry which, depending on how it is resolved, either ripens or renders moot the Rule 15(c) question decided by the lower court. It is well established that, in proper cases, an appellate court may affirm the ruling of the trial court on any ground, including one not expressly relied on by the court below. *See California Bankers Ass'n v. Shultz*, 416 U.S. 21, 71, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); *United States v. Day*, 192 U.S.App.D.C. 252, 259 n.16, 591 F.2d 861, 868 n.16 (1979); *cf. Parking Management, Inc. v. Gilder*, D.C.App., 343 A.2d 51, 54 n.4 (1975) (en banc). Moreover, even if we were to confine ourselves to the ground relied on by the trial court and were to decide in favor of appellant on that issue, it would not, in all likelihood, obviate our having to pass on the statute of limitations issue because the additional defendants, who would be brought in for the first time by an amendment of the complaint on remand, would be free to assert the statute of limitations as a defense. Thus, for reasons of judicial economy, among others, we reach that issue on the present record.

**7.** The only trial court rule cited by the court in *Maier* was Rule 14, which provided:

Every action shall be commenced by filing in the clerk's office a libel, information, bill, petition, or declaration, as the case may be, and, in each case, the plaintiff shall make the deposit towards clerk's costs, required by

the plaintiff file his complaint with the Clerk, who thereupon issued the process and returned it to plaintiff or his representative for delivery to the Marshal for service, the court held that the statute of limitations was not tolled until the Marshal's fee for service had been paid. 68 App.D.C. at 310, 96 F.2d at 582. The court then emphasized that an exception to this rule would be granted only "upon a proper showing that circumstances which could not reasonably have been foreseen delayed payment, proof of reasonable diligence thereafter [being] sufficient to prevent the operation of the statute." *Id.* Under this analysis, there is a two-step inquiry, and the question of reasonable diligence is reached only *after* plaintiff has demonstrated that the delay could not reasonably have been foreseen.

Shortly after the decision in *Maier*, Rule 3 of the Federal Rules of Civil Procedure became effective.[8] Rule 3 provides that "[a] civil action is commenced by filing a complaint with the court." Following the effective date of the federal rule, and the adoption of a corresponding local rule, the cases over the next thirty years reflect some confusion over whether, in light of these rules, the filing of the complaint, without more, tolls the running of the statute of limitations or whether, instead, the rule of *Maier* continued to require some action by plaintiff to ensure prompt service beyond the mere filing of the complaint.[9]

In *Criterion Insurance Co. v. Lyles*, D.C. App., 244 A.2d 913 (1968), this court disposed of any ambiguity as to the governing local rule. In that case, plaintiff sued a local resident, two Maryland corporations and a District of Columbia corporation.

Plaintiff filed its complaint, and process was issued on the last day of the period of limitations. Before delivering the summonses and copies of the complaint to the Marshal for service on any defendant, plaintiff's counsel spent eighteen days attempting to secure a bond which, by statute, was required in order to obtain service on nonresident corporate defendants. While all three corporations were served several days later, no service was ever made on the District of Columbia resident. This court affirmed the lower court's dismissal of plaintiff's claim for failure to deliver the process to the Marshall before the statute of limitations had run, citing the continuing local tradition of having the Clerk issue and deliver the summons and complaint to the plaintiff or plaintiff's representative, who was then responsible for delivering the process to the Marshal for service. *Id.* at 914–15. In reaching this conclusion, we reiterated that

> courts in this jurisdiction have developed the rule that an action is "commenced" when the complaint is filed and the summons is issued and delivered to the Marshal for service. Ordinarily, the applicable statute of limitations stops running at this point. Our rule and the comparable rule in other jurisdictions are based upon the principle that an action commences when a plaintiff has done *all* that is incumbent upon him toward the issuance and service of process. Since local custom places an extra obligation upon the initiator of a civil action, the statute of limitations ordinarily does not cease to run until that obligation is fulfilled. [*Id.* at 914] (emphasis added, footnote and citations omitted).

law, unless such deposit shall be dispensed with by order of the court; whereupon the clerk shall immediately enter the cause upon the proper docket, in order of such filing, and number it accordingly.
68 App.D.C. at 308, 96 F.2d at 580.

8. Federal Rule 3 had been adopted prior to the decision in *Maier*, but it had not yet become effective. The opinion in *Maier* acknowledged the pendency of the new federal rule, but the court apparently did not feel that its decision was affected by the rule, one way or the other. 68 App.D.C. at 309 n. 1, 96 F.2d at 581 n.1.

9. Some opinions continued to cite *Maier* with approval and to follow the rule of that case. *See Slater v. Cannon*, D.C.Mun.App., 93 A.2d 92, 94 (1952); *Bowles v. Dixie Cab Ass'n*, 113 F.Supp. 324, 326 (D.D.C.1953); *Harris v. Stone*, 115 F.Supp. 531 (D.D.C. 1953). A few decisions, however, appeared to suggest that the rule set forth in *Maier* had been modified by Fed.R.Civ.P. 3 and its local counterpart. *See Clark v. Keesee*, D.C.Mun.App., 136 A.2d 394, 396 (1957); *Reynolds v. Needle*, 77 U.S.App. D.C. 53, 54 n.1, 132 F.2d 161, 162 n.1 (1942).

We also emphasized, again citing *Maier*, that the only recognized exception to the rule arose when plaintiff had shown that

> circumstances which could not reasonably have been foreseen delayed delivery of these summonses and that, under the circumstances, delivery had been made with reasonable diligence . . . . [*Id.* at 914–15.]

After our decision in *Criterion*, Super.Ct.Civ.R. 4(c)(3) was added to Super.Ct. Civ.R. 4(c), giving plaintiff the option of mailing process by registered or certified mail, return receipt requested.[10] The precise question to be decided in this case, then, is whether the rule of *Criterion*, a case involving service of process by the U.S. Marshal, is applicable to a case in which plaintiff elects to serve process himself, by certified mail, and delays mailing until after the statute of limitations has run. This court has not directly confronted this question before.[11] However, we can perceive of no reason to relax the rule of *Criterion* when service is made by mail pursuant to Super.Ct.Civ.R. 4(c)(3). Logically, of course, the physical act of taking the process to the post office and mailing it is the equivalent of delivering it to the Marshal for service. In either case, the plaintiff or his representative has placed the process in the proper channel for service and has done *all* that is incumbent on him to ensure

prompt service, without being penalized for lack of diligence by the Marshal or postman, over whom plaintiff has no control. If anything, the rule should perhaps be applied more rigidly in cases involving service by mail, since in such cases plaintiff has voluntarily sought the benefit of a procedural rule which, in giving the plaintiff more control over the mode and time of service, by-passes the relatively simple routine developed by the United States Marshal's Office and thereby enhances the risk that the process might be mislaid or forgotten in the press of other business. Indeed, whatever presumption of regularity attaches to service by the United States Marshal would not apply in cases in which the plaintiff elects to serve by mail and is himself responsible for delivery of process to the post office. In any event, we see no reason to abandon the rule of *Criterion* in cases where, as here, a plaintiff elects to serve by certified or registered mail rather than by U.S. Marshal.

In the case currently before us, appellant's counsel could have delivered the summons and complaint to the Marshal for service. Instead he chose to take the option of service by certified mail. Under the rule set forth in *Criterion*, appellant's counsel therefore assumed the burden of actually posting the summons and complaint before

10. The relevant portions of Super.Ct.Civ.R. 4(c)(3), which became effective on February 1, 1971, are as follows:

> (c) By Whom Served. Service of process shall be made in one of the following ways which may, at the plaintiff's election, be attempted either concurrently or successively
>
> . . . .
>
> &ast;&ast;&ast;&ast;&ast;&ast;
>
> (3) By the plaintiff or his agent, by mailing a copy of the summons and complaint to the defendant by registered or certified mail and filing with the court the signed return receipt attached to an affidavit which shall specifically state each of the following: The caption and number of the case; the date upon which the summons and complaint were mailed and by whom they were mailed; and, if the return receipt does not purport to be signed by the party named in the summons, then specific facts from which the court can determine that the person who signed the receipt meets the appropriate qualifications for re-

ceipt of process set out in section (d) of this rule. Service shall be deemed made as of the date the return receipt was signed.

11. Prior to the adoption of Rule 4(c)(3) to allow service by mail in all cases, a similar question was presented in a case involving service of a nonresident motorist by mail, as authorized by D.C.Code 1967, § 40–423(a), the nonresident motorist statute. *Heinrich v. Huke*, D.C.App., 244 A.2d 915 (1968). In that case, decided just three weeks after *Criterion*, we affirmed the dismissal of a complaint on the ground that the action was barred by the statute of limitations because, although the complaint had been filed and served on the Director of Motor Vehicles within the statutory period, the plaintiff had failed to mail the summons and complaint to the nonresident motorist for seven months. In that case we relied, in large part, on a specific statutory command that a copy of the summons and complaint be sent to the nonresident motorist "forthwith" by registered mail.

the statutory period of limitations had run. Furthermore, appellant has failed to demonstrate why an exception to this rule should be granted. The record below is devoid of any showing of unforeseen circumstances preventing appellant's counsel from mailing the summons and complaint as soon as he got them from the Clerk on Friday, March 4, or from mailing them on any of the following days to and including Monday, March 7.[12] In sum, although the delay of one day which is at issue in the instant case is admittedly brief, it is, in light of *Criterion*, a fatal delay. This is not a case in which an unforeseeable event truly prevented appellant's counsel from delivering process to the Marshal or from actually mailing it, and we are constrained to hold that the statute of limitations was not tolled by the filing of the complaint in this case.[13]

Such a result works a regrettable hardship on this plaintiff. Congress, however, has legislated the exact period within which each action must be brought. The United States Supreme Court has held that "[s]uch periods [of limitations] are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary." *Kavanagh v. Noble*, 332 U.S. 535, 539, 68 S.Ct. 235, 92 L.Ed. 150 (1947), *rehearing denied*, 333 U.S. 850, 68 S.Ct. 656, 92 L.Ed. 1132 (1948).

*Affirmed.*

---

12. We note that the explanation proffered by appellant's counsel at oral argument as to his secretary's absence from work on Monday, March 7, did not explain why appellant's counsel, himself, could not have performed the simple task of addressing the envelope and taking it to the post office.

13. We recognize that our decision in this case is in apparent conflict with the decision of the United States District Court in *Manatee Cablevision Corp. v. Pierson*, 433 F.Supp. 571 (D.D.C.1977) (Richey, J.). In that case, on similar facts, the District Court held that the rule of *Criterion* should not be followed in federal court, even where federal jurisdiction is based solely on diversity of citizenship. Like this one, *Manatee* was a case in which the plaintiff elected to serve the summons and complaint by mail, pursuant to Super.Ct.Civ.R. 4(c)(3), rather than by delivery to the Marshal for service. The decision in *Manatee*, however, was based largely on the court's interpretation of Fed.R. Civ.P. 3, which provides that "[a] civil action is commenced by filing a complaint with the court." The District Court in *Manatee* interpreted Federal Rule 3 as a tolling provision, which declared when an action is deemed filed for statute of limitations purposes, rather than as a mere procedural rule describing the initial step in civil litigation. We, of course, are not bound to follow the District Court's interpretation of the federal rule. Although *Manatee* appears to be in line with the majority of recent decisions, we would note that there is a lack of uniformity among the federal courts which have considered the question. *Compare United States v. Wahl*, 583 F.2d 285 (6th Cir. 1978), and *Metropolitan Paving Co. v. International Union of Operating Eng'rs*, 439 F.2d 300 (10th Cir.), *rehearing denied*, (1971), and *Sylvestri v. Warner & Swasey Co.*, 398 F.2d 598 (2d Cir. 1968), with *Hukill v. Pacific & Arctic Ry. & Navigation Co.*, 159 F.Supp. 571, 574, 17 Alaska 498 (D.Alas.1958), and *International Pulp Equip. Co. v. St. Regis Kraft Co.*, 55 F.Supp. 860, 861 (D.Del.1944); see also Notes of the Advisory Committee to Rule 3, Fed.R.Civ.P.; 4 C. Wright & A. Miller, Federal Practice and Procedure § 1056, at 177–78 (1969). Moreover, although our local Rule 3 is identical to its federal counterpart, several of the federal decisions holding that the filing of the complaint tolls the statute of limitations reach that result from the premise that service is a ministerial act to be performed by the Marshal, with a presumption of regularity. *See, e. g., Moore Co. v. Sid Richardson Carbon & Gasoline Co.*, 347 F.2d 921, 924 (8th Cir. 1965). This premise is less valid in cases where service is to be made by mail, with plaintiff or his agent responsible for the mailing, in any event, we have on numerous occasions, not involving service by mail, followed the rule of *Criterion* and required something more than the mere filing of the complaint to toll the running of the statute of limitations, and we are not persuaded, for the reasons we have stated, to abandon that rule in this case.